Francis M. HOUTS, Applicant,

v.

STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Respondent.

No. SCBD 2072.

Supreme Court of Oklahoma.

May 11, 1971.

Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for applicant.

Paul M. Vassar, Gen. Counsel, Oklahoma Bar Ass'n, Chandler, for respondent.

JACKSON, Justice:

On October 25, 1966, Francis M. Houts was disbarred from the practice of law and membership in the Oklahoma Bar Association following conviction in the federal court for wilfully and knowingly attempting to evade income taxes by filing a false and fraudulent income tax return. We denied rehearing on November 22, 1966. Oklahoma Bar Association v. Houts, Okl., 420 P.2d 498. Mr. Houts has made application for reinstatement to the practice of law and membership in the Oklahoma Bar Association. We review the record and proceedings conducted by the Oklahoma Bar Association.

Our reported decision in the disbarment proceedings shows that Mr. Houts reported $47,464.20 taxable income for the years 1960, 1961, and 1962, and the federal authorities charged him with having a total taxable income for those years of $105,-825.22, thus failing to report $58,361.02 of taxable income. He testified in connection with his application for reinstatement that since his conviction he had paid the federal government approximately $60,000.00 "in settlement of this matter." It further appears that $15,452.08 of this sum was for delinquent taxes and interest for the years 1957, 1958, and 1959. Mr. Houts also testified that in 1967 he paid income tax delinquencies to the State of Oklahoma for the

years 1957, 1958, 1959, 1960, 1961, and 1962, in the total sum of $4,601.00.

On October 1, 1968, in a Memorandum Decision (39 O.B.A.J. 1719), we denied reinstatement for the reason that Mr. Houts was still under probation and that reinstatement at that time would be detrimental to the public interest. We are requested to review the evidence presented in that application in connection with the evidence presented in the present application.

The Board of Governors has concluded from the record and proceedings that:

1. Mr. Houts has engaged in the unauthorized practice of law during disbarment.

2. He does not possess the moral qualifications required for admission to the practice of law in Oklahoma.

3. He does possess the competency and learning in the law required for admission to the Bar in Oklahoma.

4. His reinstatement to the practice of law would be detrimental to the integrity and standing of the Bar; to the administration of justice; and to the public interest.

The Board recommends that the application for reinstatement be denied.

We find that Mr. Houts has engaged in the unauthorized practice of law contrary to the provisions of Article VII, Part One, Sec. 22(b), and Art. II, Sec. 7, Rules Creating and Controlling the Oklahoma Bar Association. 5 O.S.1961, Chap. 1, App. 1; 5 O.S.Supp.1970, Chap. 1, App. 1, Art. X, Sec. 20(b), Art. II, Sec. 7.

On November 26, 1966, Mr. Houts wrote the Executive Director of the Oklahoma Bar Association expressing his view that the disbarment would become final during the ensuing week. He requested that the letter be preserved as a declaration of his intention to refrain from the unauthorized practice of law during the period of his disbarment.

On November 28, 1966, Mr. Houts obtained and filed final decrees in two estates. We think the order of disbarment became effective on October 25, 1966, and final when petition for rehearing was overruled. Disbarments are original proceedings in this court and Rule 40 is applicable, and not Rules 28, 29, and 33, Rules of the Supreme Court of Oklahoma, 12 O.S.1961, following Sec. 987 (Chap. 15—Appendix). However, we have heretofore permitted disbarred attorneys to practice pending action on petition for rehearing.

On May 19, 1967, an "intermediate" report of the guardian in the Carver guardianship was filed with the clerk of Woods county. On July 24, 1967, an annual report was filed in the Hastings guardianship. Mr. Houts admits these were prepared in his office, and admits there was no other attorney in his office.

On June 6, 1967, Mr. Houts offered in writing to recodify the City Code of the City of Alva for $500.00–$750.00, depending upon the amount of work involved. The City Council accepted the offer. Mr. Gruber, one of the attorneys for the City, testified that Mr. Houts gave the Council a progress report on July 18, 1967, and advised the Council that a number of ordinances were outmoded and should be brought into harmony with statutory laws that he had examined. At his request a committee was appointed to confer with him on the reported conflicts prior to completion of the city code. The American Bar Association's committee on Unauthorized Practice of Law has expressed the view that checking ordinances against corresponding provisions of state law so as to make the ordinances parallel and not conflict with state law, constitutes the practice of law. Informative Opinion A of 1958 (Unauthorized practice News—Volume XXXI, Number 3, page 61). We agree.

Mr. Houts admits that he has filled in the blank spaces in warranty deeds and has typed in the blank spaces in real estate sales contracts which he keeps in a form cabinet in his office. He was selective in using the proper forms.

Mr. Houts thinks he prepared a guardian's report for Ralph Watkins, Guardian of Joe Watkins.

As an attorney in good standing in 1965 Mr. Houts prepared a will for Mrs. Beeler. On March 27, 1968, at her request he re-typed the will to insert a new beneficiary in lieu of a beneficiary who had died.

On July 30, 1969, Mr. Houts filled in the blank spaces in a deed, using a form with plat restrictions prepared by him prior to disbarment.

Continuing to engage. in the practice of law has been held a sufficient ground for denying reinstatement. In re Lacey, 11 Cal.2d 699, 81 P.2d 935, and see Anno., Reinstatement of Attorney, 70 A.L.R.2d at page 289.

In the instant case Mr. Houts testified that he made no charges for filling out deed forms, but did make a charge for writing contracts for the sale of real estate. He made no charge for writing the will and preparing the guardian's reports.

We are aware that the courts are not in harmony on the question of whether the preparation of deeds and contracts by real estate agents constitutes the practice of law. Anno.Practice of Law—Real Estate Agents, 53 A.L.R.2d at pages 804 and 807. Whether a fee was charged, and whether only the blank spaces were filled in has influenced some of the decisions. We are not here concerned with whether a real estate agent or an abstractor may prepare instruments for the conveyance of real property. We are concerned with whether the selection of forms by an attorney, filling in the blank spaces, and making no charge for that service constitutes the practice of law. It is well known that many licensed attorneys often perform professional services gratuitously. This constitutes the practice of law when performed by a licensed attorney. We see no reason why a different rule should apply when the service is performed by a disbarred attorney. When professional knowledge is exercised by a licensed attorney or a disbarred attorney in selecting the

proper form for conveyancing of real estate he is practicing law. See People v. Sipper, 61 Cal.App.2d Supp. 844, 142 P.2d 960.

Our attention is invited to Disciplinary Rule 3 and Ethical Considerations 3-5, Code of Professional Responsibility, In re Matthews, 58 Idaho 772, 79 P.2d 535; Mickel v. Murphy, 147 Cal.App.2d 718, 305 P.2d 993, and Oregon State Bar v. Security Escrows, Inc. (Oregon State Bar v. American Escrows, Inc.), 233 Or. 80, 377 P.2d 334. These citations deal with the question of whether a layman is engaged in the unauthorized practice of law when he prepares instruments generally used in the real estate business for transferring interests in land. These cases define the practice of law, but are not authority for the proposition that a disbarred lawyer may prepare papers incident to transferring real property without violating the Rules Creating and Controlling the Oklahoma Bar Association.

Other than the facts herein related and two instances of failure to comply with standards of professional ethics we find no evidence that Mr. Houts is morally disqualified to practice law. He does possess the competency and learning in the law for admission to the bar in Oklahoma, however, by defining the practice of law in his favor he is inclined to fudge into the practice of law.

An attorney is not a public officer. However, attorneys admitted to the practice of law in Oklahoma are a part of the judicial system of Oklahoma and are officers of its courts. Article I, Section 2, Rules Creating and Controlling the Oklahoma · Bar Association, 5 O.S.Supp.1970, Chap. 1, App. 1, following Section 18 of the statutes (effective Sept. 24, 1966).

Although we do not hold that a pardon is a condition precedent to reinstatement to the practice of law in Oklahoma, it is true that Mr. Houts does not have a pardon at this time. Considering this fact with the fact that Mr. Houts has engaged in the unauthorized practice of law while he has

been disbarred, we are of the view that to reinstate Mr. Houts at this time to the practice of law would be detrimental to the integrity and standing of the bar and the administration of justice. Application for reinstatement to the practice of law is denied.

WILLIAMS, IRWIN, LAVENDER and McINERNEY, JJ., concur.

BERRY, C. J., DAVISON, V. C. J. and BLACKBIRD and HODGES, JJ., dissent.